AO 91 (Rev. 11/11)  Criminal Complaint (approved by AUSA F. Labor III)                    USAO No. 18-144

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Pennsylvania

United States of America                )
               v.                )
Matt Jones, a/k/a "Mack,"               )     Case No.  18-2016-M
Carol Njeri Lucy                        )
                                 )
                                 )
_____         )
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   January 2018 through July 17, 2018  in the county of          Philadelphia          in the

   Eastern      District of       Pennsylvania      , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, United States Code ("U.S. C."), Sections 846, 841(a)(1), 841 (b)(1)(B)(i); Title 18, U.S.C. Section 924(c); Title 18, U.S.C. Section 922(g)(1). | Count 1 - Matt Jones, a/k/a "Mack," and Carol Njeri Lucy: conspiracy to distribute and possess with intent to distribute 100 grams and more of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. Sections 846, 841(a) (1) and 841(b)(1)(B)(i), from January 2018 through July 17, 2018 in Philadelphia, PA; Count 2 - Matt Jones, a/k/a "Mack," and Carol Njeri: possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. Section 924(c) on July 17, 2018, in Philadelphia, PA; Count 3 - Matt Jones, a/k/a "Mack:" possession of firearm by a felon on July 17, 2018 in Philadelphia, PA. |

This criminal complaint is based on these facts:

See attached Affidavit of DEA Task Force Officer Dale Keddie

☑ Continued on the attached sheet.

_____
*Complainant's signature*

DEA Task Force Officer Dale Keddie
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  12/17/18
_____

_____
*Judge's signature*

City and state:         Philadelphia, Pennsylvania                    Jacob P. Hart
*Printed name and title*

## AFFIDAVIT OF PROBABLE CAUSE

I, federal Task Force Officer and Bucks County Detective Dale Keddie (hereafter referred to as your Affiant) being duly sworn according to law, deposes and states:

### AFFIANT'S BACKGROUND

1.      Your Affiant is a detective with the Bucks County, Pennsylvania District Attorney's Office and a Task Force Officer with the United States Drug Enforcement Administration (DEA). Your Affiant has been employed with the Bucks County District Attorney's Office since May, 2012. Prior to this position, your Affiant was employed with the Middletown Township Police Department, Bucks County, Pennsylvania, as a police officer for 18 years. Your Affiant was a detective assigned to the criminal investigations division and then promoted to sergeant, both concentrating on drug investigations. Your Affiant is currently assigned to the DEA Taskforce Group 51, Philadelphia Division, where your Affiant investigates the illegal sales and distribution of controlled substances within the Eastern District of Pennsylvania.

2.      Your Affiant has also completed 435 hours of drug training schools with the Middle Atlantic Great Lakes Organized Crime Law Enforcement Network (MAGLOCLEN), the Bucks County District Attorney's Office, the Pennsylvania State Police, Northeast Counterdrug Training Center (NCTC), the DEA, the El Paso Intelligence Center (EPIC), the Pennsylvania Narcotic Officers' Association (PNOA) and the Pennsylvania Office of Attorney General. This training includes basic narcotic investigation school, drug identification schools, management of the undercover process school, narcotic identification/field test training and clandestine laboratory investigations. Your Affiant has received additional certification for

successful completion of the Class "A" Electronic Interception training course conducted at the Pennsylvania State Police Academy in Hershey, Pennsylvania.

3.     Your Affiant has been involved in more than 1,000 narcotics investigations of violation of the Controlled Substance, Drug, Device and Cosmetic Act. Your Affiant is empowered to conduct investigations of and to make arrests for offenses involving the manufacture, delivery or possession with the intent to manufacture or deliver controlled substances within the meaning of 35 P.S. §780-113(a)(30), conspiracy within the meaning of 18 Pa. C.S.A. §903, and all related crimes.

4.     Your Affiant has been involved in the execution of search and seizure warrants, Interviewing and debriefing drug violators, recruiting and utilizing confidential informants, and the execution of arrest warrants. Your Affiant has worked in an undercover capacity on several of occasions purchasing controlled substances, including, but not limited to, marijuana, cocaine, and heroin. As a result of training and experiences, your Affiant is familiar with the methods, devices and modus operandi of persons and organizations involved in the illegal importation, distribution and/or use of controlled substances. Your Affiant is familiar with the manner in which controlled substances are imported, distributed and sold, along with techniques of concealment, packaging and street terminology employed by drug dealers. Your Affiant is an investigative or law enforcement officer of the Commonwealth of Pennsylvania within the meaning of the Pennsylvania Crimes Code.

5.     Your Affiant is familiar with the clandestine manner in which drugs are manufactured, stored, sold and distributed. Your Affiant is also familiar with prices, street slang and terms, code words, and mechanisms used in association with the distribution and use of illegal drugs.

2

6.      Your Affiant is aware of the circumstances of this case and has been closely involved in the investigation through personal participation, interaction with other law enforcement agencies involved with this and related investigations, and the review of documents and intelligence pertinent to this investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of arrest warrants, I have not included all of the facts and circumstances known to me regarding this investigation.

7.      Based on the training knowledge and experience of your Affiant, I have learned the following in connection with investigating those involved in illegal trafficking of controlled substances:

a.      Those involved in the illegal trafficking of controlled substances often maintain, on hand, large amounts of U.S. currency in order to maintain and finance their ongoing drug business;

b.      That it is common for narcotic and drug traffickers to maintain books, receipts, notes, ledgers, receipts relating to the purchase of financial instruments and/or the transfer of funds, and other papers relating to the transportation, ordering, sale, and distribution of Controlled Substances;

c.      That it is common for narcotic and drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, their businesses, the residence of relatives and associates, safe deposit boxes, and/or other locations which they maintain dominion and control for their ready access, and to conceal these items from law enforcement authorities;

d.      That, in order to accomplish this concealment, drug traffickers frequently build "stash" places within their residences, within their businesses, at the residences of relatives and

3

associates, safe deposit boxes, and/or other locations (including buried on the grounds of the places described therein.) That there are a number of publications available instructing where and how to build "stash" places. Copies of these types of publications have been found in the aforementioned locations of drug traffickers;

e.     That it is common for persons involved in criminal activity to maintain evidence relating to obtaining, secreting, transferring, concealing and spending drug proceeds, such as large amounts of currency, within their residences or the residence of relatives and associates, which they maintain dominion and control over;

f.     That large-scale drug traffickers often utilize electronic equipment, such as computers, cellular telephones, currency counting machines, to facilitate their drug trafficking activities;

g.     That the sale of controlled substances generates large quantities of United States currency in small denominations (commonly referred to as "street money");

h.     That drug traffickers commonly maintain addresses or telephone numbers in books, papers or electronic devices that reflect names, addresses and/or telephone numbers of their associates in the trafficking organization, and/or individuals involved in their money laundering activities;

i.     That drug traffickers utilize cellular telephones and/or portable cellular telephones to make it more difficult for law enforcement authorities to identify and/or intercept their conversations;

j.     That drug traffickers commonly have in their possession, that is, on their person and at their residences, firearms, including but not limited to; handguns, rifles, shotguns, and ammunition. These firearms are used to protect and secure a drug trafficker's property, including

4

supplies of controlled substances and drug proceeds.

## **DETAILS OF THE INVESTIGATION**

11. Based on the facts set forth below, your Affiant has probable cause to believe that Mack Jones and Carol Njeri Lucy have committed violations of Title 21, United States Code Sections 846, 841(a)(1), and 841(b)(1)(B)(i), involving conspiracy to possess with intent to deliver 100 grams and more of a substance containing a detectable amount of heroin, and firearms offenses, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(c).

Background

12. In January 2018, the New Jersey State Police Gangs & Organized Crime Central Unit, along with the Maple Shade, New Jersey Drug Office, Philadelphia DEA Group 51, and Philadelphia Police Department IDIS, initiated a joint investigation of Matt "Mack" Jones, Carol Njeri Lucy, and other co-conspirators, for the distribution of heroin and fentanyl in New Jersey and the Philadelphia area.

13. During the investigation, law enforcement agents learned that Jones was a supplier of heroin and fentanyl, and that Jones utilized other individuals, including Lucy, to distribute drugs to customers in New Jersey and the Philadelphia area.

14. In January 2018, the NJSP received information from a cooperating source (CS-1) that a female named "Carol," who resided in Philadelphia, Pennsylvania, was working for a drug supplier who was selling large quantities of heroin and marijuana. In 2017, during a separate investigation, New Jersey law enforcement agents identified CS-1 as a participant in drug transactions and the unlawful sale of a firearm. New Jersey authorities charged CS-1 with heroin trafficking and a firearm offense. CS-1 pled guilty to the New Jersey charges and agreed to cooperate with law enforcement officials. CS-1 is awaiting sentencing in the New Jersey case.

5

CS-1 has a prior state court conviction for possession of cocaine, and prior state court conviction for carjacking and resisting arrest. Information provided by CS-1 during the course of this investigation has proven to be reliable.

The January 31, 2018 Controlled Buy

15. On January 9, 2018, CS-1, under the supervision of the NJSP, CS-1 met with Lucy at the Cherry Hill Mall, in Cherry Hill, New Jersey. During this meeting, CS-1 obtained a sample of suspected heroin from Lucy. CS-1 was equipped with a recording device. A review of the recording confirmed CS-1 and Lucy discussed a heroin purchase, as described by CS-1. Laboratory analysis of the sample confirmed the material contained .24 grams of a mixture of heroin and fentanyl. At the time of this transaction, Lucy resided at 1751 Foster Street, Apartment C8B, Philadelphia, Pennsylvania.

16. On January 31, 2018, CS-1 made arrangements with Lucy to purchase 75 grams of heroin. CS-1 met with Lucy at the Cherry Hill Mall in Cherry Hill, New Jersey, where Lucy gave CS-1 75 grams of heroin in exchange for $5,250 in United States currency. Surveillance agents observed the meeting. CS-1 was equipped with a recording device. A review of the recording confirmed CS-1 and Lucy discussed the heroin transaction, as described by CS-1. Laboratory analysis of the material confirmed it consisted of 74.83 grams of a mixture of heroin and fentanyl.

17. Toll records for a telephone number subscribed to Lucy, reflect that the telephone number had multiple contacts on January 31, 2018 with a telephone number associated with Jones, both before and after the meeting between CS-1 and Lucy.

The February 15, 2018 Controlled Buy

18. The NJSP and the DEA conducted a second controlled buy of heroin using CS-1

6

on February 15, 2018.

19. At approximately 11:54 a.m., law enforcement agents observed Lucy drive in a white-colored BMW sedan to the parking lot for the apartment complex located at 1751 Foster Street, Philadelphia, Pennsylvania. Surveillance agents observed Lucy park her vehicle next to a white Buick automobile and enter apartment C8B. Surveillance agents then observed Jones exit the Buick and enter apartment C8B.

20. Under the supervision of law enforcement agents, CS-1 made arrangements with Lucy to purchase 100 grams of heroin. At 12:39 p.m., surveillance agents observed Lucy exit the apartment at C8B, enter the BMW sedan and drive to the Cherry Hill Mall. CS-1 met with Lucy at the Cherry Hill Mall, and obtained 100 grams of heroin from Lucy in exchange for \$7,000 in cash. Laboratory analysis of the material confirmed it consisted of 99.67 grams of a mixture of heroin and fentanyl. CS-1 was equipped with a recording device and a review of the recording confirmed CS-1 and Lucy discussed the heroin purchase, as described by CS-1. Toll records for the telephone number subscribed to Lucy, reflect that the telephone number had multiple contacts on February 15, 2008 with a telephone number associated with to Jones, both before and after the meeting between CS-1 and Lucy.

The July 17, 2018 Searches

21. In January 2018, Lucy had told the CS-1 that she had "a guy" who was supplying her with the drugs. CS-1 told Lucy that CS-1 wanted to talk to her "guy" so that CS-1 could negotiate a better price for the heroin. Lucy told CS-1 that her "guy" could not come to New Jersey because he was on parole and was not allowed to travel to New Jersey. Later, CS-1 spoke by telephone with a male to negotiate additional heroin purchases. However, CS-1 never met the person face to face.

7

22.     In April 2018, law enforcement agents obtained information that Jones had moved to Apartment C8B, 1751 Foster Street, Philadelphia, Pennsylvania. However, on April 19, 2018, surveillance agents observed Jones park his vehicle at, and enter the premises located at 108 Federal Street, Bensalem, Pennsylvania.

23.     On June 28, 2018, the Honorable John Kelley, of the Camden County, New Jersey Municipal Court, approved an arrest warrant for Carol Lucy on state felony charges including the distribution of heroin and fentanyl, distribution of heroin and fentanyl within a school zone, and possession of a controlled substance. Due to Lucy's frequent travel out of the country and to other states, law enforcement agents obtained a tracking warrant from the Mercer County, New Jersey Superior Court, for the cellular telephone which Lucy had been utilizing during the narcotics investigation.

24.     At approximately 1:31 a.m. on July 17, 2018, the tracking device indicated Lucy was located at 108 Federal Street, Bensalem, Pennsylvania, the location where law enforcement agents had observed Jones.

25.     At approximately 9:30 a.m. on July 17, 2018, Bensalem Township police officers along with other members of the task force went to 108 Federal Street, Bensalem, Pennsylvania, to execute the arrest warrant for Lucy. When law enforcement officers knocked on the door at 108 Federal Street, Jones answered the door. The officers advised Jones they were investigating an abandoned 911 call as a ruse to keep him calm. Jones, who appeared nervous, stated that he was in the residence alone and nobody had contacted 911. Law enforcement officers entered the residence to locate Lucy and execute the arrest warrant because the tracking device continued to place her at the location.

26.     Jones became more agitated and was advised to sit on the couch in the second

8

floor living room/kitchen area. Upon entry onto the second floor, Bensalem Police Officer Christopher Gray observed a money counter on the kitchen counter, along with two razor blades containing a white substance, and a Ziploc freezer bag sealer next to them.

27.     At this time, Jones became more irate and stood up from the couch. Philadelphia Detective George and Police Officer Fox then walked to the third floor where they encountered Lucy in a bedroom, contrary to Jones' earlier statement that no one else was inside the house. When Officer Fox and Detective George entered the bedroom, Officer Fox observed a black-colored handgun on the dresser in plain view. The officers arrested Lucy. Other members of the Task Force searched the premises for the presence of other persons, with negative results.

28.     Later on July 17, 2018, law enforcement officers executed a search warrant at 108 Federal Street, Bensalem, Pennsylvania. During the execution of the search warrant, law enforcement officers seized the following items: $103,291.00 in United States currency; several plastic bags containing suspected heroin, including 84 bundles containing 1,176 packets; zip lock bags containing suspected cocaine; multiple packages of suspected marijuana; a Colt model Cobra .38 caliber handgun bearing serial number 121984 and loaded with live ammunition; a MKA model 1919 12 gauge shotgun bearing serial number 1305081 and loaded with live ammunition; a money counter, mixing bowls with white residue, digital scales with white residue, a heat sealer, assorted packaging materials; and mail, a passport, and other identification documents in the name of Mack Jones.

29.     Lucy gave consent for law enforcement officers to search the premises located Apartment C8B, 1751 Foster Street, Philadelphia, Pennsylvania. During the search of the premises on July 17, 2018, law enforcement officers seized the following items: a Glock 9MM pistol, confirmed to have previously been reported stolen; a Taurus 9MM pistol, confirmed to

have previously reported stolen; approximately 100 grams of tramadol; a small amount of cocaine; 26 THC (Tetra-Hydro-Cannabinol) oil packets; approximately 5 pounds of suspected marijuana; 179 packets of suspected heroin packaged for distribution; $1,300.00 in United States currency; a large amount of paraphernalia, including clear plastic zip lock bags, jars, boxes of pre-stamped glassine baggies marked with a cartoon character, boxes of sandwich baggies, and a digital scale.

30.     At the Bensalem Police Department headquarters, officers advised Lucy of her Miranda rights, and Lucy agreed to waiver her rights and consented to an interview with the officers.  Lucy stated that Jones was her boyfriend.  Lucy stated that 108 Federal Street is Jone's house and that she had gone to Jones's house the night before to do laundry.  Lucy stated she didn't know anything about "the stuff" that was in the house.  Lucy stated she saw a gun in Jone's bedroom.  Lucy admitted that Jones had previously given her heroin which she had delivered to a male at the Cherry Hill Mall, in Cherry Hill, New Jersey.  Lucy stated that she gave the money which the male gave to Lucy for the heroin, to Jones.

31.     Laboratory analyses of the materials seized from 108 Federal Street on July 17, 2018, confirmed that the substances contained heroin with a total weight of approximately 497.74 grams.

32.     In August 2012, the Bensalem Police Department test fired the seized Colt model Cobra .38 caliber handgun bearing serial number 121984 and the MKA model 1919 12 gauge shotgun bearing serial number 1305081, and both firearms discharged projectiles.

33.     According to Pennsylvania criminal history records, Jones has multiple prior felony convictions for drug offenses, including a 2007 conviction in the Philadelphia County Common Pleas Court for possession with intent to distribute a controlled substance and criminal

conspiracy, for which Jones was sentenced to a term of imprisonment of five to ten years.

## CONCLUSION

34.    Based on my training and experience, and my knowledge of the facts and evidence developed during this investigation, I have probable cause to believe that:

(a) from at least January 2018 through July 17, 2018, Mack Jones and Carol Njeri Lucy conspired to distribute and to possess with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and (b)(1)(B)(i);

(b) on July 17, 2018, Mack Jones and Carol Njeri Lucy possessed firearms, that is, a Colt Cobra .38 special pistol loaded with live ammunition; a loaded MKA 1919 12 gauge shotgun, loaded with live ammunition, in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and

(c) on July 17, 2018, Mack Jones, having been previously been convicted of a felony in a court of the Commonwealth of Pennsylvania, unlawfully possessed firearms and ammunition, that is, a Colt Cobra .38 special pistol loaded with live ammunition; a loaded MKA 1919 12 gauge shotgun, loaded with live ammunition, in violation of 18 U.S.C. § 922(g)(1).

Task Force Officer Dale Keddie
Drug Enforcement Administration

Sworn to before me this 7
_____ day of December, 2018

Honorable JACOB P. HART
United States Magistrate Judge

11